## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VOTER REFERENCE
FOUNDATION, LLC,

      Plaintiff,

    v.

ALBERT SCHMIDT, in his official
capacity as Secretary of the
Commonwealth,

      Defendant.

No. 1:24-cv-294

Judge Joseph F. Saporito, Jr.

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## UNDER RULE 12(h)(3)

Defendant Secretary of the Commonwealth Al Schmidt respectfully submits this brief in support of his motion to dismiss pursuant to Rule 12(h)(3). Under the Third Circuit's recent decision in *Public Interest Legal Foundation v. Secretary of the Commonwealth of Pennsylvania*, 136 F.4th 456, 463 (3d Cir. 2025), *cert. denied sub nom.*, No. 25-379, 2026 WL 568366 (Mar. 2, 2026) ("*PILF*"), plaintiff Voter Reference Foundation lacks standing to bring its claims under the National Voter Registration Act. As a result, those claims should be dismissed.

## BACKGROUND

Plaintiff VRF seeks to obtain a copy of Pennsylvania's list of registered voters in order to post it on the internet. The Secretary of the Commonwealth has declined to hand over the list, based on VRF's refusal to comply with the regulations governing access to Pennsylvania voter information, including a prohibition on publishing such information on the internet. *See* 4 Pa. Code § 183.14(k). In response, VRF initiated this lawsuit, alleging that the Secretary has violated a provision of the National Voter Registration Act (NVRA) that requires states to "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i). VRF has also alleged that the prohibition on publishing voter information on the internet violates the First Amendment.

Discovery has concluded, and both parties have moved for summary judgment. Following the completion of summary judgment briefing, the Third Circuit issued its decision in *PILF*, which clarified the burden on a party seeking to establish standing to assert claims under the NVRA.

*PILF* was brought by a nonprofit organization that, like VRF here, claimed the Secretary violated the NVRA by refusing to produce certain documents. The Third Circuit, reversing the district court, held that the injury asserted by PILF under the NVRA was insufficient to give it standing to bring its claims, and directed that the case be dismissed. *PILF* at 469–70. Plaintiff in *PILF* then filed a petition for a writ of certiorari, which was denied. *See* 2026 WL 568366.

Following the Third Circuit's decision in *PILF*, the Secretary moved for leave to file a motion to dismiss pursuant to Rule 12(h)(3), which the Court granted. *See* Order, ECF 62 (Mar. 16, 2026).

## DISCUSSION

### I. At the Summary Judgment Stage, Establishing Standing Requires Evidence of a Cognizable Injury

Standing requires a plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact exists where the plaintiff has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

As a general matter, the burden on the plaintiff to establish standing varies based on the stage of the litigation: "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (cleaned up). Thus, "[a]t summary judgment, a plaintiff cannot rely on mere allegations to demonstrate standing." *AstraZeneca Pharmaceuticals LP v. Secretary U.S. Dep't of Health and Human Services*, 137 F. 4th 116, 123 (3d Cir. 2025). Rather, "[i]t must set forth by affidavit or other evidence specific facts demonstrating that standing requirements have been met." *Id.* (cleaned up). Furthermore, at any stage, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).[1]

---

[1] Standing is a jurisdictional defect, and "[u]nder Rule 12(h)(3) … lack of subject matter jurisdiction should be raised and adjudicated by a motion to dismiss, not a motion for summary judgment." *Solomon v. Solomon*, 516 F.2d 1018, 1027 (3d Cir. 1975), *abrogated on other grounds*,

## II. Standing Under the NVRA's Disclosure Provision Requires Proof of a Nexus Among the Asserted Injury, Resulting Downstream Consequences, and the Interest Protected by the Statute

In evaluating a party's standing, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* at 426 (quoting *Spokeo*, 578 U.S. at 341). Such a statutory right does not obviate the requirement that a plaintiff be "*concretely harmed* by a defendant's statutory violation." *Id.* at 426–27. And in assessing whether a harm is concrete, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (quoting *Spokeo*, 578 U.S. at 341).

Where a plaintiff asserts an "informational injury"—that is, harm resulting from being deprived of information it claims a right to—under

---

*see Matusow v. Trans-Cnty. Title Agency, LLC*, 545 F.3d 241, 245 n.6 (3d Cir. 2008). This fact does not preclude the Court from considering the entirety of the record in ruling on this motion. *See PILF*, 136 F.4th at 461 n.2 (reviewing entire record where district court had addressed standing at motion to dismiss stage).

a statute that is not otherwise a "public-disclosure law," it must identify a "downstream consequence" from failing to receive the requested information. *Id.* at 442. An "'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* (quoting *Trichell v. Midland Credit Mgmt., Inc.,* 964 F.3d 990, 1004 (11th Cir. 2020)).

In *PILF*, the Third Circuit applied these general principles to the specific context of a claim under the NVRA's disclosure provision. Like VRF, the plaintiff in *PILF* alleged that the Secretary had violated the NVRA by refusing to produce certain materials to it. Relying on *TransUnion*, the Third Circuit observed that "it is insufficient for Article III standing purposes for a plaintiff asserting an informational injury from a violation of a statute that contains a public disclosure aspect as part of its overall scheme to allege only that he has been denied information." *PILF*, 136 F.4th at 465. Rather, where a plaintiff asserts a violation of a disclosure provision of a broader statute, determining whether the plaintiff has standing requires assessing the purpose of the statute as a whole and determining whether the plaintiff has "establish[ed] a

nexus among a downstream consequence, [plaintiff's] alleged harm, and the interest Congress sought to protect." *Id*.[2]

The *PILF* court then focused on the NVRA itself, concluding that there was "an insufficient nexus among the downstream consequences identified by PILF and the interest that Congress sought to protect" in the statute. *PILF* at 467. PILF had asserted that it sought the requested information "to study and analyze and scrutinize records" as well as to "evaluate the accuracy of the Commonwealth's voter rolls." *Id*. (cleaned up). The Third Circuit concluded that PILF's stated intent to "study and analyze and scrutinize" was "not an enumerated purpose of the NVRA

---

[2] Other courts have applied the same analysis. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 632 (6th Cir. 2025) ("The combination of analogous case law from the Fifth and Third Circuits and PILF's failure to articulate specific downstream consequences demonstrates that PILF has failed to show a sufficient injury to confer Article III standing"); *Campaign Legal Center v. Scott*, 49 F.4th 931, 938 (5th Cir. 2022) ("[E]ven in public disclosure-based cases, plaintiffs must . . . assert 'downstream consequences, which is another way of identifying concrete harm from governmental failures to disclosure."); *Pub. Int. Legal Found. v. Fontes*, No. CV-25-02722, 2026 WL 45037, at *3 (D. Ariz. Jan. 5, 2026) (applying *TransUnion* because the NVRA's objective is broader than records access; requiring plaintiff to "identify 'downstream consequences,' meaning concrete and particularized harm from governmental failures to disclose"; and requiring plaintiff to "show a nexus between the downstream consequence, the alleged harm, and the concrete interest Congress sought to protect").

*nor do these aims advance the expansion of voter registration and participation in federal elections." PILF* at 467 (cleaned up & emphasis added). Because PILF had failed to demonstrate the requisite nexus among the alleged statutory violation, the downstream consequences of that violation, and the purpose of the statute, it lacked standing.

### III.  Under *PILF*, VRF Lacks Standing for Its NVRA Claims

Like plaintiff in PILF, VRF has "failed to identify some specific adverse downstream consequence for its mission or future plans that has a nexus to the interest Congress sought to protect in enacting the NVRA, namely the expansion of voter participation in federal elections." *PILF*, 136 F.4th at 469. As a result, it lacks standing to pursue its NVRA claims.

1.      VRF's asserted injuries under the NVRA stem from the Secretary's refusal to provide it with Pennsylvania's full voter list, due to VRF's refusal to comply with the requirements governing access to that list. According to its complaint, VRF seeks to post the full voter list on the internet in order to "crowdsource" the correction of alleged errors in Pennsylvania's voter rolls. Compl. ¶ 46, ECF 1 (Feb. 19, 2024). Specifically, VRF "hopes that thousands or even millions of concerned citizens

who share its interest in election transparency, participation, and integrity will view, analyze, and discuss the data." Compl. ¶ 133.

VRF has not offered any evidence establishing a nexus between this desire to publish Pennsylvania voter information on the internet and "the expansion of voter participation in federal elections." To the contrary, the evidence in the record shows that VRF's publication of voter data on the internet *diminishes* voter participation. Voters who discover their personal information on the internet often complain to VRF, expressing concern for their safety and ambivalence about the electoral process. *See* Br. in Supp. of Def.'s Mot. for Summ. Judg. at 13–15, ECF 39 (Dec. 6, 2024) ("Def.'s SJ Br."). As one voter put it, "This is why people do not register to vote. Because you take our names and addresses which are private and you broadcast them across the entire world. Opening us up to all kinds of threats." Br. in Opp. to Pl.'s Mot. for Summ. Judg. at 14, ECF 44 (Jan. 10, 2025) ("Def.'s SJ Opp. Br.").

Despite this evidence, VRF has claimed that "sharing the requested information [the voter rolls] would foster confidence in the integrity of the electoral system, thereby encouraging voter participation." Br. in Opp. to Am. Mot. for Leave at 8, ECF 53 (June 2, 2025) ("Mot. for Leave

Opp."). But these claims are just the sort of vague assertions that the Third Circuit rejected in *PILF*. There is no *evidence* in the record to support this alleged chain of events. In light of the facts showing that VRF's actions actually undermine voter participation, these claims are pure fantasy.

The evidence in the record—as opposed to VRF's unfounded assertions—provides no support for concluding that publishing voter information on the internet promotes effective voter list maintenance in any way. VRF, by its own admission, does not track whether users of its website contact state officials to seek correction of purported errors in state voter rolls. *See* Def.'s SJ Br. at 17. As a result, the record is devoid of proof that publication of personal voter data on the internet actually leads to corrections in state voter rolls. Instead, VRF "hopes" that this process will occur—with nothing to back up those hopes.

2.      In *PILF*, the Third Circuit recognized that the NVRA seeks to "ensure that accurate and current voter registration rolls are maintained" in service of the broader goal of "increasing citizen participation in federal elections." *PILF*, 136 F.4th at 467 (citing 52 U.S.C. § 20501(b)). This fact is of no help to VRF, because its allegations that its activities

will lead to improved voter records are no substitute for actual evidence, and there is no such evidence showing that publishing voter information on the internet leads to improved voter rolls. *See, e.g.,* Def.'s SJ Opp. Br. at 27

Any reliance on this language from the NVRA fails for the additional reason that the NVRA seeks to "ensure that accurate and current voter registration rolls are maintained" by regulating the manner in which *state and local officials* conduct list maintenance activity. *See generally* 52 U.S.C. § 20507. It does not authorize those officials to remove voters from the rolls based on calls from individuals who have reviewed voter information on a website. *See* Def.'s SJ Opp. Br. at 27 & n.7. And, as the Third Circuit concluded in *PILF*, "while a statute may authorize private suits to compel compliance with the law, private citizens are not deputized as private attorneys general empowered to enforce any and all violations of a statute without regard to their personal stake in the matter." *PILF*, 136 F.4th at 468. Like PILF, VRF "is not an attorney general with general standing to enforce the provisions of the NVRA in the absence of proof that it maintains a personal and constitutionally significant stake in the matter." *Id.*

It is not enough for VRF to claim that it has standing simply because it has specific plans to post voter data on the internet. *Cf. PILF*, 136 F.4th at 468–69. The public disclosure of voter information is certainly not a purpose of the NVRA—just as "[t]o 'study and analyze' and 'scrutinize' records" was found by the Third Circuit not to be a purpose of the NVRA. *PILF*, 136 F.4th at 467. As was the case in *PILF*, VRF's planned activities are not "essential to a concrete interest protected by the statute." *Id*. To the contrary, VRF's activities actually undermine the interests Congress sought to protect in the NVRA. *See supra*.

3.     VRF's "apprehension that it faced criminal or civil enforcement if it followed through with its plans," Mot. for Leave Opp. at 7, cannot establish standing for its NVRA claims. Under certain circumstances, a plaintiff may bring a "pre-enforcement" challenge based on an alleged constitutional violation. *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 219 (3d Cir. 2023). But such challenges are "the exception rather than the rule," and "[e]ven in constitutional cases, there is no unqualified right to pre-enforcement review." *Id*. Here, VRF seeks to bring a pre-enforcement challenge based on an alleged *statutory* violation—but "a statutory violation is not enough to show standing," absent

"'a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Id.* (quoting *TransUnion,* 594 U.S. at 424).[3]

For this reason, *PILF v. Bellows*, 92 F.4th 36, 54 (1st Cir. 2024), and *VRF v. Torrez*, 160 F.4th 1068, 1079 (10th Cir. 2025), do not help VRF's case. While both decisions found that plaintiffs had standing under the NVRA, neither so much as mentioned the Supreme Court's decision in *TransUnion*. Both found standing based on a plaintiff's claimed fear of enforcement, without acknowledging—contrary to the Third Circuit's decision in *National Shooting Sports Foundation*—that such theories rarely, if ever, can establish standing for statutory claims. Such fear of prosecution may be relevant to a plaintiff's First Amendment claims (and here, the Secretary has not challenged VRF's standing to assert its First

---

[3] *National Shooting Sports Foundation* casts considerable doubt on whether a pre-enforcement action based on a statutory violation could ever proceed. *See* 840 F.4th at 219 ("Nor has [plaintiff] explained why this potential statutory (rather than constitutional) violation would justify pre-enforcement review. We will not try to connect the dots for it.").

Amendment counts), but it cannot support standing under the NVRA.[4] Neither *Bellows* nor *Torrez* recognized this distinction.

A party bringing suit under the NVRA must be "aggrieved by a violation" of the statute. *See* 52 U.S.C. § 20510(b). The "violation" that has purportedly "aggrieved" VRF is the Secretary's refusal to provide it with Pennsylvania's voter rolls, which VRF requested pursuant to the NVRA's requirement that state agencies "shall make available for public inspection" certain materials relating to list maintenance. *Id.* § 20507(i)(2). VRF's alleged injury under the NVRA is thus purely informational. It cannot bootstrap its purported fear of what might happen if it were to misuse the information it demands into an injury cognizable under the NVRA resulting from the Secretary's refusal to provide it with that information in the first place.

\*      \*      \*

---

[4] *Torrez* further found that plaintiff had standing based on the fact that the NVRA creates a statutory cause of action. *See* 160 F.4th at 1078–79. *TransUnion* forecloses this reasoning: "For standing purposes, therefore, an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation of federal law." 594 U.S. at 426–27 (2021).

14

Because VRF lacks standing under the NVRA, its claims asserting violations of that statute should be dismissed. *See TransUnion*, 594 U.S. at 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek.") (cleaned up).

## CONCLUSION

For the reasons set forth above, the Secretary's motion should be granted, and VRF's NVRA claims should be dismissed.

March 23, 2026

Respectfully submitted,

*/s/ Mary Katherine Yarish*
Mary Katherine Yarish (PA 328843)
Deputy Attorney General
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120

*/s/ Michael J. Fischer*
Michael J. Fischer (PA 322311)
Executive Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 831-2847
mjfischer@pa.gov

Kathleen A. Mullen (PA 84604)
Ian B. Everhart (PA 318947)
Pennsylvania Department of State
306 North Office Bldg.
401 North Street
Harrisburg, PA 17120

15

## CERTIFICATE OF SERVICE

I hereby certify that I filed the above document using the Court's CM/ECF system. Service will be accomplished on all counsel of record through the CM/ECF system.

Dated: March 23, 2026         */s/ Michael J. Fischer*
                              Michael J. Fischer